ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:   (415) 436-7034
    Facsimile:   (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EVER ESAU SANCHEZ-MORADEL, <br><br> Defendant. | CASE NO. 23-mj-71678-MAG <br><br> MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |

## I. SYNOPSIS

On November 7, 2023, defendant Ever Esau Sanchez-Moradel was arrested in the Tenderloin and found in possession of multiple controlled substances, including fentanyl and over 40 grams of methamphetamine. At that time, he already was the target of a federal investigation into fentanyl trafficking, during which he had sold 223.9 grams (approx. ½ pound) of fentanyl during undercover buys on August 24, September 14, and October 13, 2023. He has been distributing this deadly drug in a city where 572 people have already died from fentanyl overdoses this year alone.[1] Thus, Mr. Sanchez-Moradel poses an extreme danger to the community.

---

[1] Luke N. Rodda, Ph.D, Report on Accidental Overdose Deaths, dated November 15, 2023, available at https://sf.gov/sites/default/files/2023-11/2023%2011_OCME%20Overdose%20Report.pdf.

Mr. Sanchez-Moradel also is a risk of non-appearance.  Pretrial Services recommends detention on that basis.  He is an undocumented alien (a Honduran citizen) with no ties to this community.  He claims to have lived with his nephew, Ricky Alexander Murillo-Sanchez, for the past five months, but the federal investigation into his activities demonstrates otherwise.  And Mr. Murillo-Sanchez should not qualify as a surety in any event.  He was arrested earlier this year on drug-related charges.  He is undocumented, and faces deportation proceedings.  Thus, Mr. Murillo-Sanchez cannot demonstrate to the Court that he can fulfill the solemn obligations that the Court would place on a surety.

In light of the above, the Court should find Mr. Sanchez-Moradel's continued pretrial detention is appropriate.  He cannot overcome the presumption in this case that no condition, or combination of conditions, exists that will reasonably assure his appearance in court, and the community's safety.

## II. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id*.  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible.  *Id*.  Consideration of factors outside those articulated in section 3142 is also disfavored.  *Id*.

When the defendant is an undocumented alien, facts in connection with that status can be considered by a court in evaluating flight risk, even though the fact of the defendant's involuntary deportation may not.  *See generally*, *United States v. Santos-Flores*, 794 F.3d 1088, 1092-93 (9th Cir. 2015).  Thus, a court may consider a defendant's "multiple unlawful entries into the United States, . . . , his use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against him."  *Id*. at 1092.  Considering these factors does not "create a

categorical rule that would prevent release for undocumented defendants . . . ." *Id*.

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure both the defendant's appearance as required, and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). The initial burden of production to overcome the presumption is on the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). While the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.) *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). The presumption is not so weak that, if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id*. (stating that "a 'bursting bubble' approach might render the presumption virtually meaningless" because a defendant can "always provide the magistrate with some reason"). Thus, the presumption is never erased; instead, it remains as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *U.S. v. King*, 849 F.2d 485 (11th Cir. 1988); *United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the defendant has rebutted the presumption, the court must then consider four factors to determine whether to detain pretrial: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II.   OFFENSE CONDUCT

The Criminal Complaint results from Mr. Sanchez-Moradel's arrest on November 7, 2023, which followed agents observing him engaging in hand-to-hand transactions in the Tenderloin. On that day, law enforcement recovered the following from Mr. Sanchez-Moradel's bag incident to arrest:

      • Suspected Methamphetamine, 46.60 grams (with packaging);

      • Suspected Cocaine, 40.20 grams (with packaging); and

      • Suspected Fentanyl, 4.20 grams (with packaging).

Beyond this arret, there is a lot of related offense conduct that shows he is a danger to the community.

      **A.**     **The Defendant Sells Fentanyl On August 24, 2023**

Since August 2023, the DEA and the Alameda County Narcotics Task Force ("ACNTF") have been investigating the drug trafficking patterns of Mr. Sanchez-Moradel, who was operating under the pseudonym "ELI." On August 22, an ACNTF undercover office texted with Mr. Sanchez-Moradel to purchase two ounces of fentanyl for $400. During their text exchange, Mr. Sanchez-Moradel noted he needed to know what time so he can go to San Francisco afterward (presumably to sell in the Tenderloin). On August 24, they texted again. At 3:33 p.m. that day, Mr. Sanchez-Moradel then met with the undercover in Oakland, and sold approximately two ounces of fentanyl—per later testing by the DEA lab, it was 55.6 grams of a substance containing fentanyl.

      **B.**     **The Defendant Sells Fentanyl On September 14, 2023**

On September 14, 2023, at 2:04 p.m., the undercover met with Mr. Sanchez-Moradel in Oakland and sold three ounces of fentanyl in exchange for $600—per later testing by the DEA lab, it was 84.9 grams of a substance containing fentanyl. Mr. Sanchez-Moradel then gave the undercover a small sample of cocaine base for free.

After the drug deal, agents observed Mr. Sanchez-Moradel travel to an apartment complex located at 1351 95th Avenue in Oakland. And pursuant to ping warrant no. 3:23-mj-71410-PHK, agents observed that Mr. Sanchez-Moradel's phone pinged almost every night during overnight hours, from about September 18, 2023 to about October 18, 2023, in the vicinity of 1351 95th Avenue—and not at the International Boulevard Address he reported to be living at during the past five months to Pretrial Services.

      **C.**     **The Defendant Sells Fentanyl On October 12, 2023**

On October 12, 2023, at 2:52 p.m., the undercover met with Mr. Sanchez-Moradel in Oakland again, at which time Mr. Sanchez-Moradel sold another three ounces of fentanyl for $600—per later testing by the DEA lab, it was 83.4 grams of a substance containing fentanyl.

In an effort to learn who was his supplier, after the fentanyl transaction, the undercover requested to purchase heroin from Mr. Sanchez-Moradel on the spot. Agents then observed Mr. Sanchez-Moradel making phone calls, walking to the corner of 88th Avenue and International Boulevard, and then entering a silver 2007 Lexus IS350. Shortly thereafter, agents observed Mr. Sanchez-Moradel exit the silver Lexus and walk back to the undercover's vehicle, after which Mr. Sanchez-Moradel sold one ounce of suspected black tar heroin in exchange for $460 to the undercover.

### III. THE DEFENDANT'S FLIGHT RISK

Mr. Sanchez-Moradel is undocumented and has been previously removed from the United States. He has returned to different parts of the country, not just California. He has warrants for failure to appear in Louisiana and Florida. He also has two minor children back in Honduras.

As significant as his lack of ties to this community is his apparent misleading of Pretrial Services about where he resides. He claims to have lived, for the past five months, with his nephew and potential surety on International Boulevard. But the DEA's investigation into his conduct has revealed otherwise.

### IV. THE DEFENDANT'S UNRELIABLE SURETY

Mr. Sanchez-Moradel has proffered his younger cousin, Mr. Murillo-Sanchez, as a possible surety on an unsecured bond. But there are several reasons why Mr. Murillo-Sanchez is inappropriate.

First, as he noted to Pretrial Services, Mr. Murillo-Sanchez was arrested earlier this year for drug-related offenses. Specifically, he was arrested on May 4, 2023 for possession of a controlled substance (Cal. Health & Safety Code § 11351) and maintaining a place where controlled substances are kept (Cal. Health & Safety Code § 11366). (The government is still trying to obtain the police report for this arrest at the time of this filing.) So he does not appear to be a person who will offer moral suasion.

Second, Mr. Murillo-Sanchez is not only undocumented, but is currently undergoing deportation proceedings. He is 19 years-old, and has been in the community only two years. So, he does not mitigate Mr. Sanchez-Moradel's flight risk because he presents a risk of flight himself.

### IV. THE DEFENDANT IS SUBJECT TO A REBUTTABLE PRESUMPTION AND THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

Mr. Sanchez-Moradel is charged with violating 21 U.S.C. § 841(a)(1) and (b)(1)(C) (distribution of methamphetamine), which carries a maximum imprisonment of 20 years. Accordingly, he faces

Controlled Substance Act charges with maximum penalties that are 10 or more years. Thus, Mr. Sanchez-Moradel is subject to a rebuttable presumption in favor of detention; he bears the burden of proving that he is neither a flight risk nor that his release will endanger the community. *See* 18 U.S.C. § 3142(e)(3)(A).

Mr. Sanchez-Moradel cannot meet his burden. The information obtained from Pretrial Services provide no basis to rebut the presumption as to either issue. The only "mitigator" noted by Pretrial Services is that he has no history of violence, which is irrelevant to the present danger of his fentanyl dealing. Under section 3142(g)(3) and (g)(4), Mr. Sanchez-Moradel is a danger to the community that favors detention given the amount of fentanyl he has sold readily. Of note, even were he to ever put forth a stable residence—which he has not yet—home detention will not stop him from assisting others. There is clear and convincing proof that no conditions of release will stop this dealer of fentanyl from returning to the drug trade if released—and he has no verified gainful employment as an alternative.

Mr. Sanchez-Moradel also has no ties to the community. As significant, evidence of Mr. Sanchez-Moradel's guilt and likely period of federal imprisonment "makes it more likely that he will flee. . . ." *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration). The preponderance of evidence shows he is a flight risk and should be detained for that reason too.

## V.   CONCLUSION

For the foregoing reasons, the Court should detain Mr. Sanchez-Moradel pending trial.

DATED:  November 26, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

　　　　　/s/
DANIEL N. KASSABIAN
Assistant United States Attorney

2101-8150-8865, v. 1